UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY and CATRENA NACCARATO, husband and wife,<br><br>    Plaintiffs,<br><br>    v.<br><br>LIBERTY NORTHWEST INSURANCE CORPORATION,<br><br>    Defendant. | Case No. 2:13-CV-00390-EJL<br><br>**MEORANDUM DECISION AND ORDER** |

Pending before the Court in the above-titled matter is Defendant's Motion for Summary Judgment. (Dkt. 24.) Plaintiffs have responded to the Motion, and Defendants have replied. The matter is now ripe for the Court's review. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument. For the reasons stated below, Defendant's Motion for Summary Judgment is granted.

# FACTUAL BACKGROUND[1]

Plaintiff Larry Naccarato ("Mr. Naccarato") was involved in a motor vehicle collision on February 17, 2011. Mr. Naccarato reported the incident to Defendant Liberty Northwest Insurance Corporation ("Liberty Northwest") because of damage to the other vehicle and to its occupants. However, because he initially believed the damage to his own vehicle, a 1995 Dodge pickup truck (hereinafter "the Dodge"), was not more than his deductible, Mr. Naccarato declined to make a claim for his own vehicle.

Mr. Naccarato parked the Dodge for several months. On January 13, 2012, he contacted Liberty Northwest's adjuster to make a claim on his commercial policy because he learned the damage to the Dodge was more extensive than he had originally thought. The claim was reopened and an adjuster was assigned.

An independent adjuster inspected the Dodge on January 16, 2012. On February 6, 2012, Mr. Naccarato received a letter from Liberty Northwest offering him $7,329.00 to cover a total loss of the Dodge. This amount was substantially less than what Mr. Naccarato believed the Dodge was worth. Specifically, Mr. Naccarato believed the evaluation of the Dodge should also include a number of upgrades he had purchased for, but not yet installed in, the vehicle.

The parties dispute what occurred following Liberty Northwest's initial offer on February 6, 2012. Mr. Naccarato contends he attempted to resolve the claim throughout February, March, April and May, but that Liberty Northwest was completely

---

[1] Unless otherwise noted, the following facts are undisputed.

unresponsive, and essentially ignored 25-30 phone calls he made in an attempt to ascertain the status of his claim. Liberty Northwest contends that it diligently investigated Mr. Naccarato's claim, and made numerous requests for additional information that Mr. Naccarato failed to provide. Regardless, the parties do not dispute that Liberty Northwest conducted a second investigation of the Dodge on May 8, 2012. The parties also agree that Liberty Northwest made new settlement offers on May 25, 2012 and June 1, 2012.

Following the June 1, 2012 offer, the parties eventually agreed to a total of $13,308 for the Dodge, after the deductible and other deductions, and $1,500 for rental car expenses Mr. Naccarato incurred during the time he was negotiating with Liberty Northwest. Mr. Naccarato, and his wife, Catrena Naccarato, thereafter sued Liberty Northwest in Idaho state court for breach of contract and bad faith, alleging Liberty Northwest's delay in processing Mr. Naccarato's claim caused him to lose $94,976.00 in income.[2] Liberty Northwest removed the state-court action to this Court on September 6,

---

[2] Because Mrs. Naccarato was not a Named Insured under the Policy, she cannot state a claim against Liberty Northwest for either breach of contract or bad faith. *DAFCO LLC v. Stewart Title Guar. Co.*, 331 P.3d 491, 496 (Idaho 2014) ("It is axiomatic in the law of contract that a person not in privity cannot sue on a contract."); *Weinstein v. Prudential Prop. and Cas. Ins. Co.*, 233 P.3d 1221 (Idaho 2010) ("Although the tort of bad faith is not a breach of contract claim, to find that Liberty Mutual committed bad faith…there must also have been a duty under the contract that was breached."). Although Mrs. Naccarato may have suffered a loss to her community property due to Mr. Naccarato's lost income, such loss does not establish privity of contract. The Court will accordingly address only Mr. Naccarato's claims for breach of contract and bad faith.

2013 (Dkt. 1), and filed the instant motion for summary judgment on September 15, 2014 (Dkt. 24).

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FRCP 56(a). On summary judgment, all disputed facts and reasonable inferences must be construed in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). However, to raise a fact issue for trial, the nonmoving party must present more than a mere scintilla of evidence, and must come forward with evidence sufficient to show that a reasonable jury could return a verdict in its favor. *Id*. at 248. Further, Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the nonmoving party cannot make a showing on elements essential to his claims, there can be no genuine issue of material fact "since a complete failure of proof concerning an essential element on the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

**ANALYSIS**

1. **Proper Party**

In its Motion for Summary Judgment, Liberty Northwest claims that Mr. Naccarato sued the wrong party, alleging that the relevant insurance contract, Policy Number 06-CC-014109-3 (hereinafter the "Policy"), was issued to Mr. Naccarato by American States Preferred Insurance Company, and not by Liberty Northwest. Mr. Naccarato counters that there is substantial evidence to suggest Liberty Northwest is the parent corporation of American States Preferred Insurance Company and was his actual insurance company and administrator of the Policy. For instance, Mr. Naccarato only dealt with employees from Liberty Northwest throughout the investigation of his claim, submitted his monthly premium to Liberty Northwest, and believed Liberty Northwest was his insurance company. (Dkt. 25, pp. 3-4.) While Liberty Northwest has failed to identify its precise relationship to American States Preferred Insurance Company, and though it is clear from the facts that Liberty Northwest administered the Policy, the Policy itself provides that American States Preferred Insurance Company was actually Mr. Naccarato's insurance company. Specifically, under the declarations section, the Policy expressly provides: "INSURANCE COMPANY WITH RESPECT TO EACH AUTO IS DESIGNATED AS FOLLOWS: 06 AMERICAN STATES PREFERRED INSURANCE COMPANY."[3] (Dkt. 24-8, p. 17.)

---

[3] Although he initially purchased the Policy for another vehicle, Mr. Naccarato added the Dodge to the Policy the day prior to the accident. (Dkt. 24-4, p. 74.) In addition to the designation of American States Preferred Insurance Company as Mr.
(Continued)

Courts must construe "a contract of insurance as it is written, and the Court by construction cannot create a liability not assumed by the insurer, nor make a new contract for the parties, or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability." *Kromrei v. AID Ins. Co.*, 716 P.2d 1321, 1323-24 (Idaho 1986) (quoting *Unigard Ins. Group v. Royal Globe, Etc.*, 594 P.2d 633 (Idaho 1979)). As the Policy unambiguously provides that American States Preferred Insurance Company was Mr. Naccarato's insurer, his claims for breach of contract and bad faith should have been brought against American States Preferred Insurance Company. *See Wing v. Martin*, 688 P.2d 1172, 1177 (Idaho 1984) ("A party must look to that person with whom he is in a direct contractual relationship for relief, in the event that his expectations under the contract are not met."); *Idaho State Ins. Fund v. Van Tine*, 980 P.2d 566, 572 (Idaho 1999) (a plaintiff can only bring a claim of bad faith against his own insurer). Liberty Northwest is accordingly entitled to summary judgment on Mr. Naccarato's breach of contract and bad faith claims.

Given Liberty Northwest's apparent failure to ever dispel Mr. Naccarato's belief that it was his insurance company, including during the course of the investigation and negotiation of Mr. Naccarato's insurance claim, the Court would ordinarily encourage Mr. Naccarato to file a motion to substitute parties pursuant to Federal Rule of Civil Procedure 15. Such claim would likely relate back to the date of the original pleading.

---

Naccarato's insurer in the declarations section of the Policy, the Policy also identifies American States Preferred Insurance Company on pages 3, 7, 11, 13 and 15 (Dkt. 24-8).

FRCP 15(c)(C). However, because Mr. Naccarato's claims fail as a matter of law regardless of whether the proper party was named, such motion is not encouraged. In the interests of judicial economy and in saving Mr. Naccarato the expense and uncertainty of further litigation, the Court will briefly address his claims.

**2. Breach of Contract**

Mr. Naccarato claims Liberty Northwest breached the Policy by unreasonably delaying the settlement of his claim. Specifically, he contends that Liberty Northwest had "an obligation to negotiate and comply with the terms of [the Policy] for the timely settlement of claims," that such obligation was "a contract term either implied or specific in the contract for insurance," and that "Defendants [sic] breached that contract term by failing to adequately compensate Plaintiff in a timely fashion for his vehicle therefore rendering the use of the vehicle unusable and therefore damaging him financially." (Dkt. 1-1, ¶¶ XV-XVII.) Mr. Naccarato claims nearly $100,000 in lost income as damages for the four-month period, between the first offer on February 2012 and the final settlement in June 2012, resulting from Liberty Northwest's unreasonable delay in processing his claim.

Although the parties each fault the other for the delay in settling Mr. Naccarato's claim, and present different accounts of the facts,[4] such dispute is ultimately immaterial

---

[4] Mr. Naccarato maintains that Liberty Northwest failed to conduct any investigation of his claim and became completely unresponsive following its initial February 6, 2012 offer. (Dkt. 25, pp. 5-6.) Liberty Northwest contends that Mr. Naccarato was responsible for any delay in payment because he failed to submit copies of invoices Liberty Northwest requested in order to evaluate Mr. Naccarato's claim for parts
(Continued)

because Mr. Naccarato's claim for lost income is not recoverable. In breach of contract cases, consequential damages, including lost profits, are not recoverable unless they were specifically contemplated by the parties at the time of contracting. *Taylor v. Browning*, 927 P.2d 873, 882 (Idaho 1996) (quoting *Brown's Tie & Lumber v. Chicago Title*, 764 P.2d 423, 428 (Idaho 1988)). Mr. Naccarato does not highlight any language in the Policy, nor offer any evidence or testimony in the record, to suggest the parties specifically contemplated lost profits as a measure of damages for breach of the Policy.[5]

It is a fundamental premise of contract law that, although a plaintiff may have been legally wronged, he cannot recover damages unless he was economically injured. *Bergkamp v. Martin*, 759 P.2d 941, 944 (Idaho Ct. App. 1988). Mr. Naccarato has already been compensated for the Dodge, and his only claim for damages is for the profits he allegedly lost as a result of Defendant's delay. As Mr. Naccarato has not

---

he had purchased before, but not yet installed in the Dodge at the time of, the accident. (Dkt. 27, p. 3.)

[5] Mr. Naccarato suggests the parties contemplated consequential damages because "Plaintiff made the Defendant and Defendant's agent aware that he was going to put this vehicle into service immediately." (Dkt. 25, p. 6.) As Liberty Northwest notes, parties must contemplate consequential damages at the time they contract in order for such damages to be recoverable. *Taylor*, 927 P.2d at 882. Further, Mr. Naccarato does not provide any evidence or testimony from the record to support his claim that the parties contemplated consequential damages as a measure of damages for breach of the Policy. A plaintiff must produce evidence and cannot simply rely on factual assertions in order to defeat a summary judgment motion. *See, e.g., Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 265 (9th Cir. 1991).

established he is entitled to consequential damages, his breach of contract claim fails as a matter of law.

Moreover, even if Mr. Naccarato could show a right to consequential damages, he has not offered any evidence to support his lost-profits claim. To be recoverable, lost profits must be shown with a reasonable certainty. *Inland Group of Companies, Inc. v. Providence Washington Ins. Co.*, 985 P.2d 674, 682 (Idaho 1999). "Damage awards based upon speculation and conjecture will not be allowed." *Id.* (citing *Rindlisbaker v. Wilson*, 519 P.2d 421 (Idaho 1974); *see also Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002) (noting summary judgment is appropriate where evidence of damages is excessively speculative). Mr. Naccarato does not offer any evidence to support his alleged lost income of $94,976.00. He does not provide any contracts or guarantees of work he lost as a result of Liberty Northwest's delay, does not identify any individuals who might have been able to give him work, and bases his daily compensation estimate solely by averaging the amount per hour two well-established large companies charged for heavy equipment repair. However, heavy equipment repair would have been a new business for Mr. Naccarato, who operated as a sole proprietorship.[6] The hourly rate of two large and well-established companies has no bearing on the amount Mr. Naccarato would have been able to charge, nor his ability to obtain work. Further, Mr. Naccarato admitted he had not created a business plan, had no idea what his expenses and costs

---

[6] Although Mr. Naccarato testified in his deposition that he planned to hire an employee, he did not identify this person and admitted he has never had an employee before or since the accident. (Dkt. 24-4, pp. 31, 115).

9

would be, and that he never pursued the heavy equipment repair business even after the Dodge was repaired. As such, his lost profits claim is too speculative to survive summary judgment. *See MindGames, Inc. v. W. Pub. Co., Inc*., 218 F.3d 652, 658-59 (7th Cir. 2000) (affirming grant of summary judgment in breach of contract case because damages evidence was excessively speculative).

### 3. Bad Faith

To state a claim for bad faith, Mr. Naccarato must establish: (1) his insurer intentionally and unreasonably denied or withheld payment; (2) his claim was not fairly debatable; (3) the denial or failure to pay was not the result of a good faith mistake; and (4) the resulting harm is not fully compensable by contract damages. *Lakeland True Value Hardware, LLC v. Hartford Fire Ins. Co*., 291 P.3d 399, 404 (Idaho 2012). The plaintiff in a bad faith action bears the burden of proof on all four elements in order to state a *prima facie* case. *Robinson v. State Farm Mut. Auto Ins. Co*., 45 P.3d 829, 832 (Idaho 2002).

Although there appear to be disputed material facts sufficient to establish one or more of the elements of a bad faith claim, such as whether the delay was due to a good faith mistake, Mr. Naccarato has not carried his burden with respect to the fourth element. As discussed, *supra*, Mr. Naccarato has not established that he was either entitled to or that he can provide any evidence of extra-contractual damages. Mr. Naccarato has also already been fully compensated for the Dodge. Because Mr. Naccarato has failed to establish an essential element of his bad faith claim, summary judgment is appropriate and the Court need not address the other three elements.

*McGilvray v. Farmers New World Life Ins. Co.*, 28 P.3d 380, 383 (Idaho 2001) (summary judgment must be entered against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to his case upon which he will bear the burden of proof at trial); *Nelson By and Through Nelson v. City of Rupert*, 911 P.2d 1111, 1114 (Idaho 1996) (summary dismissal of a claim is appropriate when the plaintiff fails to submit evidence to establish an essential element of the claim).

## ORDER

For the reasons stated herein, Defendant's Motion for Summary Judgment (Dkt. 24) is **GRANTED**.

DATED: January 21, 2015

_____
Edward J. Lodge
United States District Judge